The next case on the call is 124676 in re Marriage of Zamudio and Ochoa, I believe, Agenda number 20. Mr. Osborne, if you're ready, you may argue. Thank you. May it please the court. Good morning. My name is Paul Osborne, and I represent Frank Ochoa, Jr., the appellant in this case. When this case was presented to the trial court in April of 2016, and then again to the 3rd District Court, the issue before those courts was quite narrow. Whether 48 months of permissive service credit as a component of 320 months of aggregate credits, which was used to calculate a retirement annuity of a past member of an Illinois State employee's retirement system, are properly characterized as being marital or non-marital. Where the qualifying event for the establishment of the 48 months of permissive service credit was active duty military service, which was completed 20 years before the marriage, or characterized as marital, where the contribution, which was also required to complete eligibility, was paid during the marriage. The issue before this court is not merely whether the 3rd District majority was correct in reversing the trial court, specifically the trial court's determination that the 48 months of permissive service credit was non-marital, because it was primarily derived from military service 20 years before the marriage. But we are also required to, beyond that, address the broader ruling from the majority of the 3rd District, which held that all enhancements to an Illinois State pension are required to be deemed marital when the option of purchasing the credits is exercised during the marriage with marital funds. Now, I contend that this broader ruling should be reconsidered by this court because it is based on a flawed interpretation of both the Illinois Marriage and Dissolution of Marriage Act and the Illinois public pension system. The decision of the trial court very specifically referred to two sentences from one very specific case, a 2003 case from the 5th District, referred to in the briefs as the Ramsey case. The trial court concluded that Ramsey was distinguishable from the Ochoa case because, number one, Frank retired during the marriage and received 56 annuity payments during the marriage, which fact it considered not insignificant. Ramsey was not about a characterization of a component of a pension as marital or non-marital, but that Ramsey was a case that involved the valuation of that pension. After making these two distinctions between Ochoa and Ramsey, the 3rd District majority then adopts one sentence from the Ramsey decision, which is the sentence that concludes that because all pension enhancements depend upon the essential right to receive a pension, all enhancements are marital to the extent that the pension is marital. Now, that conclusion from the 3rd District ignores a second sentence in the Ramsey case immediately succeeding that sentence, which second sentence the trial court, in its opinion, underlined. And that second sentence concluded that in the unusual case where the specific entitlements are not purely derivative of that portion of the enhancements, not derived from the right to receive the pension itself, that portion is the pensioner's sole property. The 3rd District effectively bars the possibility that any enhancement could be deemed anything but marital because it derives from the pension itself. But in this case, Mr. Ochoa has already vested he was receiving his pension before the relationship broke. He was receiving the pension. So it's not before. No, no, no. The fact that the pension was being received, however, does not affect the characterization of a component of the future payments. The asset that we're talking about here dividing is a public pension annuity, which is a series of monthly payments. And the calculation protocol for those monthly payments is determined by the Illinois Pension Code. So the fact that he had already received some payments during the marriage doesn't change how we characterize the future payments to be received. Because the Dissolution Act in 503 does not focus on receipt of benefits. It talks about purely the word acquired. How does one acquire those interests? So if in fact the receipt of benefits was what the relevant consideration is, then as the dissent from the 3rd District points out, why do we treat pension payments as being both marital and non-marital when the source of the acquisition of the rights in those pensions can be prior to the marriage or after the marriage? So you're arguing that they are subject to apportionment? They are absolutely subject to apportionment. That's been the law not only since 1979 under the Hunt decision, which is quoted in the briefs, but several of the districts have adopted the Hunt analysis. And not only that, when the Family Law Study Commission reviewed the history of the Hunt decision and the unique aspect of how a pension can have both marital and non-marital components, it codified that conclusion into 503A6. 503A6 specifically now says, just since the changes effective 1-1 of 2016, that assets acquired prior to the marriage are non-marital except that a pension benefit can be both marital and non-marital. That's a codification of the Hunt decision, which says if you work as a public employee for 10 years prior to your marriage, then you work another five years after the marriage, then two-thirds of your pension is non-marital and one-third is marital. And that allocation is unquestioned by Louise Zamudia, by the third district, consistently throughout all the districts, and now as codified into the Dissolution Act, that it is absolutely possible to have both marital and non-marital characteristics to an Illinois public pension plan. The question before this Court is, how do you acquire the permissive service credits beyond the regular service credits? Because there's no question under the Ochoa case, the Zamudia-Ochoa case, how much of that pension is allocated as non-marital derived from the regular service credit. It turns out that Frank Ochoa had two types of permissive service credits. One type of permissive service credits related to unused sit and vacation time. And under the pension plan system, he has to make a contribution to establish his eligibility for that unused time. We had no records that allowed us to prove whether his unused vacation was before the marriage or after the marriage. So the statute assumes that that is marital. If we had the records to prove that all of his unused sit time and all of his unused vacation was from prior to the marriage, our contention is that that component would be just as non-marital as the regular service credit is non-marital from the time that he worked as an employee prior to becoming married. The second type of permissive service credit in the Ochoa case is the 48 months of permissive service credit derived from Frank's active duty military service from 1974 to 1980. This marriage didn't occur until 2000. So he had established the eligibility for those service credits some 20 years prior to the marriage. However, he used marital money, didn't he, to pay for the service credits? He paid the contribution during the marriage. No question about that. But the statute anticipates that possibility by stating that in those circumstances where you have a non-marital asset and then there is a marital contribution to that asset, then the marital estate is entitled to a reimbursement. And that's exactly what the trial court did here. Because the contribution, which was roughly $9,400, and for that $9,400 contribution, Frank Ochoa's pension increased by over $1,400 per month. So the contribution was an almost nominal element of establishing his right. He was 57 years old when he retired, and his pension increased by $1,400 per month for a contribution of $9,000. I suggest to you that the larger element of contribution, which was the source of acquiring that asset, that 48 months was not the $9,000 check. The source was the 48 months of active duty. In fact, in the Ramsey case, what Ramsey case is instructive is that in Ramsey, the contribution was made after the marriage. And the court in the Ramsey case concluded that it's not the contribution, it's not that check that determines whether or not the asset itself is marital. And the fundamental difference between Ramsey and Ochoa is not necessarily the timing of the check, because that's nominal. The difference between Ochoa and Ramsey was the nature of the enhancement to the pension. Mr. Ramsey was a teacher, and under the TRS, the teacher's retirement system, a teacher is allowed to upgrade their pension by the payment of a nominal contribution, but that upgrade is based on a qualification of having worked for 20 years as a teacher. There was a second upgrade that Mr. Ramsey had referred to in the TRS system as the 2.2 upgrade. And under the 2.2 upgrade, he writes a nominal check, and he's eligible for a 2.2% increase to his pension for every year that he worked. So the very specific nature of the pension enhancements dealt with in the Ramsey case and the Ramsey court was indeed a pension upgrade that was derivative of the entire pension. That is the opposite of the pension enhancement in the Ochoa case. In the Ochoa case, yes, a nominal payment was made during the marriage, but that shouldn't be the trigger that determines the marital or nonmarital character of that 48 months of permissive service credit that's part of the overall formula in calculating his total monthly annuity. That 48-month service credit was from 20 years earlier. There's some discussion both in the case and in the briefs about this idea of what is a property right, and the property right that is when does it become marital when it is jointly owned, this property right. There's some interesting language in Ramsey about the idea that part of the benefit that one receives in a public pension, which we know is protected by the Constitution from the first day of employment, one of the benefits is that it cannot be diminished, but it could be increased. And so when one receives the benefit of a public pension on the first day, a contingency is there that it could be increased, the value of it could be increased. So there's some sense that maybe this triggering of what's marital or not marital might have something to do with when someone joins the public pension. Can you address that idea? Absolutely. The component of the third district opinion dealing with characterizing the military service as a property right is in defense to the criticism of the dissent, which the dissent states this is a simple case. It's a simple case because what we're looking at is not military services property. We're looking at property being a stream of payments, a monthly annuity, and how is that monthly annuity determined? The Illinois General Assembly determined how that monthly annuity would be calculated. You're absolutely right. As a constitutional matter, it cannot be diminished. But the treatment of it as either marital or non-marital in a divorce case is a different question than the diminution or the alteration of those pension benefits by the General Assembly. The question of how it is allocated as between a husband and wife is based on the language of the Dissolution Act, which requires focusing on how it is acquired, how each segment of this pension. So we know that the segments attributed to the time that they actually work are divisible into marital and non-marital components. We also know that if we cannot prove how a particular aspect was acquired, or if it was required because of the language of the pension provision in question, specifically attributes the right to upgrade to a 20-year service or to an upgrade which is calculated based on the number of years of service. Based upon the pension as a whole, that it then is, in fact, treated as if it is the same as the other aspects of the pension. So it is marital to the extent it's marital, and it's non-marital to the extent it's non-marital. But what the third district is saying is that it's always treated as marital if the upgrade takes place during the marriage. And that doesn't answer the question correctly of how it was it acquired. If it was acquired by a check, if it was acquired by the check, consider the fact that there are two sections to the state employee's retirement system dealing with military service. There's section 104J, this section in question, which 104 has subsections A through R, and the title of 104 is service credits permitted by contribution. So each of the A through R in 104 is how you can make a contribution and acquire additional service credits. By serving as an assistant in the General Assembly, you can acquire additional service credits. By contrast, 105 are service credits that can be acquired without any contribution. And the major credit defined in 105 that can be acquired without any contribution is if you serve in active duty in the military service, but you are an assistant in the state within six months before your active duty service and after 15 months. So there are two different benefits provided by the General Assembly for active duty military service, and we're going to construe the Dissolution Act to have one be shared with a spouse because of a nominal contribution under 104, but yet we're going to give to a spouse under 105 his four or five years of military service simply because of a nominal contribution. Because there was no contribution, the contribution shouldn't be the key. A, it's nominal. B, there are two separate statutes where the legislature is rewarding military service, not length of time in the pension system. The length of time in the pension system is how they reward teachers with the 2.2 upgrade and how they award teachers with the early retirement option, but they're awarding state employees who served in the military service in a compliant way. And that's got to be recognized and embraced incident to a dissolution. Take the example, what if Frank and he was married to a different wife during his military service and had been married to that same wife through the first part of his employment as a state police officer? What if in that divorce there had been a reservation of jurisdiction, which was the common resolution prior to 2009 when the state police officer was appointed? The pension code was adjusted to permit what are called quildros, a qualified Illinois domestic relations order. So the common resolution when you did a divorce of a public employee prior to establishing the quildro process was to reserve jurisdiction. If Frank's first wife had a judgment that reserved jurisdiction to preserve her interest in his Illinois pension, doesn't she have a better right because she was married to him during the four years he served in the military? And if Frank's first wife had a judgment that reserved jurisdiction to preserve her interest in his Illinois pension, doesn't she have a better right because she was married to him during the four years he served in the military? Concluding that it's ruling that all upgrades, all enhancements to a pension are not automatically marital just because a check is written during the marriage. Look to Mr. Osborne, 503B1 that talks about presumption being marital properties acquired during the marriage. Are you saying that the presumption is defeated in this case since the military service that was part of the enhancement? Are you looking at that as therefore property not distributed during the marriage? Is that a simplification of your argument or is that where you're going with it? No, that's exactly the argument is the 32 service credits were not acquired during the marriage. They were acquired prior to the marriage. They were acquired 20 years prior to the marriage. The acquisition key was not the writing of the check during the marriage. The acquisition key was the military service. Your time has expired. Good morning. May it please the court. My name is Allison Fagerman and I represent the appellee in this case, Louisa Mudia. To answer counsel's question, what would happen if that first wife filed a reserved jurisdiction appeal? Indicating that her rights were paramount to Louisa's rights. In this case, to put it quite simply, your honors, the first wife has absolutely no right to that pension. And the reason is because this pension is the Illinois State Police pension, not a pension that is in relation to Frank's prior years in the military. Put another way, Louisa's right to the state police pension that was earned during the marriage is because during the marriage, Frank worked for the state police. Her rights, Louisa's rights, accrued from the day she married Frank up until the day he retired. So to answer counsel's question, absolutely not. The way I keep hearing it, maybe there are, I thought four triggers. So I want to make sure I understand what you're saying. One argument is these become marital, they are marital, they're non-marital because of his military service. So all of this was 20 years ago. Or was the trigger when he joined the fund and began his employment, which was before his marriage? Or is the trigger when the legislators created this new benefit? Or is it when the contribution is made that now they're able to buy into this? Seems like there are four different time periods. Thank you, your honor. So the pension at issue in this case is Frank's state police pension. So Frank began working for the state police in 1989. So for 11 years prior to his marriage to Louisa, which was in the year 2000, Frank, and only Frank, had an interest in that pension. When Frank married Louisa in the year 2000, he, both Frank and Louisa, had a joint interest in that pension, which began the day he married her. Up until the year 2011, I believe it was August 1st, 2011 when he retired, still married to Louisa. It was during that 11 year period, and if I recall correctly it was the year 2004 and 2008 where he had made two payments. It was a little less than $10,000 in total that they made during the marriage. Counsel is correct that, but for Frank's prior years in the military, that there would be no four years of permissive service to enhance. But Frank's position is flawed to the extent that Frank's service in the military was not property. Frank's service in the military had no relation with regards to the Illinois state police pension. Until, one, he worked for the state police, and until, and this is pursuant to 40 ILCS 14-104J, in the section of that statute prior to getting the subsection J, there's a provision that a contribution paid as a lump sum or paid in installments prior to retirement and meeting the eligibility requirements would enable a pensioner to add on time that they actually did not serve to their membership credibility. In this particular case, Frank retired at the age of 57, and he retired with 26.67 years of creditable service. That included the four years that were added on by this permissive service credit. Counsel indicates to the court, is this about issuing a check? It's not about issuing a check. The Ramsey opinion went to great length to indicate this isn't about the issuance of a check. It is the totality of this pension, the pension as unenhanced and the pension as enhanced, which characterizes the pension as either marital or not. Frank argues today, which is the larger contribution? Frank's service in the military for four years in active duty or the issuance of this check. But leaves out the 11.5 years from the year 2000 until the year 2011, where Frank, while married to Louise, earned a pension that became marital property because he was married to her. Right. Let me just ask you this, Counsel. Slightly different scenario hypothetical. Let's just say those four years of military service, it's not indisputable that happened prior to the marriage, those four years of military service, right? Correct. And let's just say instead of a pension enhancement in that case, it was some type of stipend from the government. They wrote a check for $5,000 as a result of that military service. I'm making that up, obviously. And it was sent. Is that marital property? Sent to Frank. At what point in time, Your Honor? They're married, and the check is instead of an enhancement to the state police pension, it's just some type of stipend that the government decided to give people who served in the military during that 48-month period. Is that marital property? In that particular case, I would indicate that that would be Frank's non-marital property. I'm just wondering, in light of that, doesn't the majority's decision effectively treat Frank and Louise as if they were married four years longer than they were? I don't think so. And the way that I would answer that, Your Honor, is this. The reason why the enhancement is marital property is not just because while married there was the purchase of this four-year admiral. It was also because of the nature of the pension unenhanced. The nature of the pension unenhanced was about 50% marital. I get to that number because, again, for 11 years prior to Frank's marriage to Louise, he worked for the state police. And then for another 11 and a half years or so, while married to Louise, he worked for the state police. The Ramsey opinion goes as far as saying this. It rejected the pensioner's position. The pensioner in that case being John Ramsey. John Ramsey argued, this is all solely non-derivative. It was my money that I paid for while we weren't married on a teacher's salary in order for me to get that enhancement. The non-pensioner's spouse said, their contribution shouldn't matter at all. We were married for 20-something years. This is purely derivative. Purely marital property. Purely related to my former husband's right to receive the pension in the first place. And the Ramsey court said, look, this pension is in part non-derivative because the pensioner had to do something. He had to pay a contribution in order to receive the enhanced pension. But the court also said, those 20-something years of marriage were not insignificant. Those 20-something years of marriage means that that unenhanced pension was 60% marital. It was the combination of the marital character of the unenhanced pension plus the non-marital character of the contribution that made it a partially derivative pension. Notwithstanding, the appellate court gave the non-pensioner's spouse a bigger piece of a larger pie, but told her, you have to pay for half of what your ex-husband had to pay in order to get it. Counsel's argument, Frank's argument, that the appellate court ruled that in every case this conclusion has to be reached. I did not read the appellate court to state that. The appellate court indicated, in my opinion, rather clearly, that from the day that Louise and Frank married, Louise's rights to the unenhanced pension began to improve. Louise was married to Frank for 11 and a half years prior to his retirement. So in other words, for 11 and a half years while married to Louise, he earned this pension. The appellate court went on to state that the purchase with marital clause during the marriage, in other words, a marital contribution to what was already in part marital property, is in fact marital property. And the Ramsey court went to great length. In fact, it cited three cases all out of state. It cited to the Oligo case, it cited to the Stouffer case, Ramsey cited to the Lehman case. And in each of those cases, the appellate court went to great length to indicate, look, in each of those cases, the pensioner didn't have to do anything except say yes to their employer's offer to receive a pension enhancement. But indicated that the distinction between that case and the Ramsey case was that in the Ramsey case, the pensioner actually did have to do something in addition, which was the purchase of the enhancement. In this case, your honors, the statute presumes, and I cite to 750 ILCS 5-503, subparagraph, sorry, right in the introduction before subparagraph A, it indicates clearly that all property acquired after the marriage is marital property. Under subsection B, it's not only marital property, it's presumed to be marital property. Counsel, excuse me a minute. There were 11 years of credit, right, under the state police pension that were non-marital? Correct. And that's because the service to the state police was prior to the marriage, right? Correct, your honor. Why is that not analogous to the four years that were outside of the marriage in the enhancement situation? Your honor, so just as the dissent had stated to the appellate court, I think it's worth for something along the lines of why not go all out and indicate that the 11 years of service were also marital? And the answer to that, your honors, is this. Those four years, and it goes back to what I stated at the beginning, those four years in the military have no relation to the Illinois state police pension except for the Illinois state police pension section. That indicates that with the purchase by paying an amount of money prior to retirement, those four years can be purchased. With respect to those... Is it the timing of it? Is it the fact that say the enhancement came during those 11 years of the marriage, there wouldn't be any question, right? Well, your honor, I have thought about that, and quite honestly, based off the Ramsey analysis, Ramsey indicated even a partially derivative pension, even a partially derivative pension can be divided in its whole, meaning that the non-pensioner spouse receive a larger portion of a larger pie. But in this case, in this case, and I don't think I completely answered your honor's last question, but in this case, it is clearly a marital contribution of monies to a pension that was already in part marital. This is not about between just a check and four years of service. Counsel and Frank leave out the 11 and a half years of marriage, which Ramsey indicated is obviously an important part of the analysis. The court asked the question of what is the difference between these four years of military service and the 11 years of service with the state police. No rights approved, no rights were acquired with respect to the Illinois state police pension. Until Frank began to work for the state police. The statute is clear on rights. So Frank's right, his member service credit began on the day he started with the state police. Same is not true for the four years of military service credit for active duty. So your honors, I would indicate to the court that the enhancement in this case is marital property. Subject to division, Louisa is entitled to her marital share of that pension. I would ask the court to affirm the appellate court, the appellate court, your honors. Got it, got it right. Thank you. Thank you. I've been waiting for you. Mr. Osborne, what about the fact that to get this enhancement, it took marital funds? We can come up with all types of situations. Maybe if they didn't have any money there, maybe the wife had to use non-marital funds to come up with the $9,000 to get the enhancement. Does that have any effect whatsoever that it definitely took marital funds to get the enhancement? It happens when a garage is added to a non-marital house by marital contributions. The marital estate doesn't transmute the house into marital because you add a garage. The house remains non-marital. The garage, the cost of the garage gets reimbursed to the marital estate. This is a non-marital asset because it was acquired 20 years before the marriage. The contribution gets reimbursed. People don't have a lot of assets. You have a wife that has non-marital property, the only way that the husband at the time is going to get this enhancement and benefit. That person, that wife, says Aunt Sally gave me $10,000. Let's use the $10,000 to get this enhancement. That $10,000 that's in some non-marital account that could get interest for the next 20 years is now used to get an enhancement that at the end of the day, the wife will never see. She will never see the enhancement. She'll get back her share of the $10,000. If it was a non-marital contribution from her mom, she should get back the whole $10,000, not just half of it. But not the interest for the 20 years. I mean, she's not contemplating a divorce at the time. Because the key is, how do you acquire this 48 months? Do you acquire it with that check? I say you don't. I say you acquire it by 48 months of military service is how it was acquired. Just like the garage doesn't change the house into a marital asset, a $10,000 contribution doesn't change, what happens when he's eligible for that 48 months is he gets $1,400 a month for life. So the question to this court is, how did he acquire that interest? How did he acquire that extra $1,400 a month every year the rest of his life? It was because of the elaborate pension system that's been created by the state of Illinois, which this particular component, this particular right, yes, it has two components. It has 48 months of military service and it has a check. If the conclusion is that this was acquired because of that check, then it's marital. If the conclusion is that it was acquired because of his military service, then the check doesn't affect how it was acquired. The check is a marital contribution to be reimbursed, which is exactly what the trial court did. This court in the, I think it was the Goebbels decision. It was another family law case two terms ago in 2017. The issue was the disgorgement of attorney's fees. And I think it was the last time that this court was construing the Illinois Marriage and Dissolution of Marriage Act. And a lengthy part of that opinion looked at different hypotheticals and said, we can't construe a statute in a way that would lead to absurd, inconvenient, or unexpected results. Now, in the Ochoa case, yes, Louisa Choa was married to Frank for 138 months during the time he was a state police officer. And she's entitled to the marital share created by that $1,400. The third district decision in this case gives her 191 months. Why? Because a check was written. And that's wrong. That's an absurd result. She is entitled to her 138 months, no doubt about it. But the 48 months that's attributed to the military service belongs to Frank Ochoa, who served honorably at a NATO Air Force base in West Germany during that period of time. And that's how he acquired this property interest. Mr. Osborne, the 48 months absent the contribution that was made, was there any monetary value to that? military service, which he was not. So he didn't qualify for the upgrade under Section 105. He only qualified for the upgrade under Section 104, which required the nominal contribution. And you've more than once referred to the 48 months that he acquired that. And I'm wondering if it's more accurately characterized that he was eligible for something because of those 48 months, and that eligibility was then realized with the financial contribution that was made during the marriage. There's lots of terminology. Eligibility, qualified, established the right to, derives from. The only one that makes a difference is how did he acquire it. And the question is, did he acquire it because he wrote a check during the marriage, or did he acquire it because he served that 48 months? And if no one else has any other questions, I wanted to ask you, Wardbury and Pace is the same law firm that Mr. Zollinger is from, who just argued. I've been there for 40 years. It's the first time the firm has argued before the Supreme Court in that 40 years, and now twice in one day. I noticed that. Thank you. Thank you. Case number 124676-3, the marriage of Saludia and Frank Wachoa, will be taken under advisement as agenda number 10. Mr. Osborne, Ms. Figureman, we thank you for your arguments.